IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

CONNER KOWALKOWSKI,

                          OPINION AND ORDER

               Plaintiff,

v.                                               18-cv-721-slc

FRANCOIS SALES AND SERVICES, INC.,
LANDMARK CREDIT UNION and
ALLY FINANCIAL INC.,

               Defendants.
───────────────────────────────────────────────────────────────

In this civil suit brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (FCRA), and Wis. Stat. 995.50 (invasion of privacy), plaintiff Conner Kowalkowski alleges that defendants Francois Sales and Services, Inc., Landmark Credit Union, and Ally Financial Inc. obtained a copy of his credit report without his permission or a permissible purpose, causing him to have a lower credit score. Before the court is Ally's motion for judgment on the pleadings under Fed. R. Civ. P. 12[c], in which it argues that Kowalkowski's allegations show that Ally had a permissible purpose for obtaining the credit report and that the FCRA preempts the state law invasion of privacy claim. Dkt. 29. For the reasons stated below, I am granting the motion and dismissing all of Kowalkowski's claims against Ally.

Solely for the purposes of deciding the motion for judgment on the pleadings, I find that Kowalkowski has fairly alleged the following facts in his second amended complaint:

**FACTUAL ALLEGATIONS**

After purchasing two vehicles from Francois Sales, a car dealership, in May 2018, Kowalkowski gave the dealer permission to pull his credit report on August 14, 2018. (Although it is not clear from the allegations in the second amended complaint, Kowalkowski explains in his response brief that an additional transaction occurred in August 2018, during which he

allegedly traded in one of the vehicles he had purchased in May for a third vehicle.) When giving Francois permission to obtain his credit report to secure financing, Kowalkowski specifically asked the dealer (apparently in a text message) to "start by only sending my credit application to people you think may approve me" because "[l]ast time we applied it hit our credit at 18 different banks and hurt my credit a lot." Dkt. 14 at 3. Francois allegedly submitted Kowalkowski's credit application to five lenders, including Ally and Landmark, but submitted the application to Ally and Landmark on two consecutive days. According to Kowalkowski, "[d]efendants should have known that if these companies did not approve Conner for credit on one day, they would also not approve him the very next day." *Id.* ¶ 18.

OPINION

I. Legal Standard

The parties agree that motion for judgment on the pleadings under Fed. R. Civ. P. 12[c] is subject to the same standard as a motion to dismiss under Rule 12(b)(6), which "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). In deciding such a motion, the court views the complaint in the light most favorable to the non-movant, accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). A claim should survive a motion to dismiss "if the complaint contains well-pled facts—that is, not just legal conclusions—that permit the court to infer more than the mere possibility of misconduct." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## II. FCRA Claim

Kowalkowski has brought a claim under the FCRA, 15 U.S.C. § 1681b, alleging that Ally (and the other defendants) obtained his consumer credit report without a permissible statutory purpose. *See* § 1681b(f) ("A person shall not use or obtain a consumer report for any purpose unless– (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section. . ."). Section 1681b(a) provides:

> Any consumer reporting agency may furnish a consumer report under the following circumstances and no other:"
>
> \* \* \*
>
> (3) To a person which it has reason to believe –
>
> > (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer; or
> >
> > \* \* \*
> >
> > (F) otherwise has a legitimate business need for the information –
> >
> > > (i) in connection with a business transaction that is initiated by the consumer; or
> > >
> > > (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

If an entity requests a report for a purpose not listed in the act, an injured consumer can recover the "actual damages" caused by negligent noncompliance, *see* 15 U.S.C. § 1681o(a)(1), or both actual and punitive damages caused by willful noncompliance, *see* 15 U.S.C. § 1681n. *Stergiopoulos v. First Midwest Bancorp*, 427 F.3d 1043, 1046 (7th Cir. 2005).

3

Kowalkowski argues that he did not authorize Ally's access of his credit report on two consecutive days because he had limited the release of his credit report by asking Francois to "start by" sending his credit application to lenders that Francois thought might approve him. Ally responds that Kowalkowski's FCRA claim against it fails for two reasons: (1) the alleged statement to Francois did not limit Kowalkowski's consent to pull his credit report because Kowalkowski merely requested that the dealer "start" its search for a lender by contacting only those institutions that were likely to approve financing; and (2) Kowalkowski does not include any allegations in his complaint from which it can be inferred that Ally was aware of his request to Francois. I agree with both points.

As Ally points out, the Court of Appeals for the Seventh Circuit has held that when a consumer initiates a credit transaction at a car dealership by requesting financing, the FCRA "does not require that consumers expressly approve each request for a report," as long as the entity pulling the report is engaged in the credit transaction in which the consumer is participating. *Stergiopoulos*, 427 F.3d at 1046-47. "If the connection between a consumer's search and a bank's request is clear, it is unlikely that the request will infringe the consumer's privacy interests, for it will 'involve' the plaintiff directly." *Id.* at 1047 (citing *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004) ("Many of the enumerated permissible purposes set forth in § 1681b are transactions initiated by the consumer; these purposes therefore do not create significant privacy concerns.")). Here, the allegations in Kowalkowski's second amended complaint make clear that Ally pulled Kowalkowski's credit report only because Kowalkowski was seeking financing for a newly-purchased car, so "[t]he line of causation was direct and thus the request fell within the purview" of § 1681b(a)(3)(A). *Id.* at 1047 (finding same).

4

Although Kowalkowski alleges that he told Francois not to "start" with a broad search for lenders because it could harm his credit, it is impossible to infer from this vague request that he did not want any particular lender, namely Ally, to access his credit report, and more importantly, that Ally had any reason to know about his request to Francois. Kowalkowski argues that Ally is asking him to go beyond notice pleading and allege specific facts regarding the lender's mental state at the time it accessed his credit report. He suggests that "[m]aybe the issue of [Ally's] good faith could be reached after discovery and after Plaintiff determined what went wrong between his limiting instruction and Ally pulling his report on consecutive days" and that the "relationship between Francois Ford and Ally will need to be examined in discovery to see where the ball was dropped." Dkt. 41 at 5. However, even though a complaint does not have to provide the complete story, it must contain sufficient allegations to permit the court to infer more than the mere *possibility* of misconduct. *Olson*, 784 F.3d at 1089. Rather, a claim for relief must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, there are no allegations to suggest that Ally acted without a permissible purpose in obtaining Kowalkowski's credit report or that Ally had any reason to know that he was concerned about having too many reports pulled.

Notably, the Eastern District of Wisconsin recently rejected a similar "limited consent" argument in a FCRA case brought under § 1681b. *Long v. Bergstrom Victory Lane, Inc.*, 2018 WL 4829192, at *2 (E.D. Wis. Oct. 4, 2018). In that case, Long's claim rested on the allegation that Victory Lane submitted her credit application to a number of financial institutions, even though she told a Victory Lane employee not to run her credit with any other company than Capital One Auto Finance and the employee agreed not to. Relying on *Sterglopoulous* and a few

5

cases from the Northern District of Illinois, the district court held that "[u]nder the FRCA, a business does not require the consent of the potential customer, so long as it has a statutorily defined 'permissible purpose.'" *Id.* (citing *Sterglopoulous*, 427 F.3d at 1047; *Santangelo v. Comcast Corp.*, 2015 WL 3421156, at *4 (N.D. Ill. May 28, 2015); *Minter v. AAA Cook Cty. Consolidation, Inc.*, 2004 WL 1630781, at *4 (N.D. Ill. July 19, 2004)). The court reasoned that "[d]espite Long's objection, when she sought to buy a vehicle from Victory Lane, and agreed to let them use her consumer report to obtain financing, this qualified as a permissible purpose under the statute." *Id.*

Although his argument is not entirely clear, Kowalkowski tries to distinguish *Long* on the ground that the court improperly "relied" on *Ippolito v. WNS*, 864 F.2d 440, 451 n.11 (7th Cir. 1988), for the proposition that § 1681b should be "broadly construed" in determining whether a consumer report was obtained for a permissible purpose. According to Kowalkowski, *Ippolito* was more limited in scope, "provid[ing] insight into how to synthesize business and consumer transactions and reports into a way that falls within the legislative intent for the FCRA." Dkt. 41 at 6. The argument is not persuasive for a two reasons. First, the court in *Long* only cites *Ippolito* as a secondary source in a parenthetical citation in citing *Minter*, 2004 WL 1630781, and did not—as Kowalkowski suggests—"rely" on *Ippolito* to construe § 1681b broadly. Second, *Ippolito*'s discussion of the "business transaction" language in § 1681b(a)(3) has no bearing on the consent issue raised by Long or Kowalkowski because there was no dispute in either case about whether pulling the credit report for a consumer seeking financing for the purchase of a car qualifies as a legitimate business need or transaction. Therefore, the holding in *Long* is not inapplicable in this case.

Finally, Kowalkowski cites *Young v. Harbor Motor Works, Inc.*, 2009 WL 187793, at *4 (N.D. Ind. Jan. 27, 2009), in which the Northern District of Indiana distinguished *Stergiopoulos* and found that Young had not authorized the pulling of his credit report simply by seeking financing for the purchase of a car because Young had limited specifically who could check his credit. The court noted that like Stergiopoulos, Young had initiated the search for credit with the dealership and the lender's credit search was in connection with that credit transaction, but unlike Stergiopoulos, "Young took the proactive measure of explicitly writing 'NONE' on the line of the credit application following the phrase: 'You are notified that your application may be submitted to (Name and Address required).'" *Id.* "As a result, the credit applications indicate that only Honda Financial [and not the lender, Harris] was authorized to obtain credit information about Young." *Id.* Kowalkowski argues that his situation is similar. However, important to the court's decision in *Long* was the fact that the amended complaint alleged that the dealer had submitted the credit application containing the written limitation to the lender, Harris, putting Harris on notice that it did not have permission to pull Young's credit report. *Id.* Without similar allegations suggesting how Ally would be privy to Kowalkowski's alleged "limitation," Kowalkowski fails to state a FCRA claim against Ally under § 1681b.

**II. State Law Claim**

Ally argues that Kowalkowski's state law claim for invasion of privacy fails for the same reasons as his FCRA claim and because it is preempted by the FCRA. Because I agree that Kowalkowski's allegations are insufficient to state a claim for invasion of privacy, it is unnecessary to reach Ally's preemption argument.

Under Wisconsin law, an invasion of privacy includes "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass." Wis. Stat. § 995.50(2)(a). "The test is an objective one: whether a reasonable person would find the intrusion highly offensive." *Gillund v. Meridian Mutual Insurance Co.*, 2010 WI App 4, ¶ 29, 323 Wis.2d 1, 778 N.W.2d 662. Without any allegations suggesting how Ally may have known about Kowalkowski's request to keep his credit checks to a minimum, his allegation that Ally pulled his credit report on two consecutive days after he applied for financing to purchase a car does not permit a plausible inference that Ally committed an intrusion of a highly offensive nature. Accordingly, Ally's motion for judgment on the pleadings with respect to the state law claim will be granted.

ORDER

IT IS ORDERED that the motion for judgment on the pleadings filed by defendant Ally Financial Inc. under Fed. R. Civ. P. 12(c), dkt. 29, is GRANTED.

Entered this 20th day of May, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge